**CLEARY GIACOBBE ALFIERI JACOBS, LLC**
**Jodi S. Howlett, Esq. (039272007)**
955 State Route 34
Suite 200
Matawan, New Jersey 07747
(732) 583-7474
jhowlett@cgajlaw.com
Attorneys for Plaintiff, East Brunswick Township Board of Education

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EAST BRUNSWICK TOWNSHIP BOARD OF EDUCATION, | *Civil Action* |
| Plaintiff, | |
| v. | Docket No.: 2:21-cv-08279-BRM-JSA |
| D.S. and M.S. obo A.S., | **NOTICE OF APPEAL** |
| Defendants**.** | |

    **PLEASE TAKE NOTICE** that East Brunswick Township Board of Education, Plaintiff in the above-captioned action, hereby appeals to the United States Court of Appeals for the Third Circuit from an Order dated July 28, 2023, a copy of which is attached hereto, granting in part, and denying in part, Defendants' Motion for Summary Judgment.

        **CLEARY GIACOBBE ALFIERI & JACOBS, LLC**

        Counsel for Plaintiff,
        East Brunswick Township Board of Education,

        By:   s/ *Jodi Howlett*
            Jodi S. Howlett, Esq.

Dated: August 24, 2023

## <u>CERTIFICATION OF SERVICE</u>

This is to certify that a copy of the foregoing Notice of Appeal has been electronically filed with the Court this 24th day of August, 2023, via the ECF System for filing and electronic service to the following ECF registrants:

Julie M.W. Warshaw, Esq.
Warshaw Law Firm
266 King George Rd., Suite C-2
Warren, NJ 07059
jwarshaw@warshawlawfirm.com
Counsel for Defendants D.S. and M.S. obo A.S.

By:   *s/ Jodi Howlett*
Jodi S. Howlett, Esq.

Dated: August 24, 2023
4873-3449-3276, v. 1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

EAST BRUNSWICK TOWNSHIP BOARD
OF EDUCATION,

                Plaintiff,

                v.

D.S. and M.S. o/b/o A.S.,

                Defendants.

Case No. 2:21-cv-08279 (BRM) (JSA)

**ORDER**

**THIS MATTER** is opened to the Court on Defendant D.S. and M.S., on behalf of A.S.'s (collectively "Defendants") Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56. (ECF No. 59-3.) Plaintiff East Brunswick Township Board of Education ("BOE") filed an Opposition. (ECF No. 59-6.) Defendants filed a Reply. (ECF No. 59-7.) Having reviewed the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth in the accompanying Opinion and for good cause having been shown,

**IT IS** on this 28th day of June 2023,

**ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED** in part, and **DENIED** in part.

                                  */s/ Brian R. Martinotti*
                                  **HON. BRIAN R. MARTINOTTI**
                                  **UNITED STATES DISTRICT JUDGE**

<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EAST BRUNSWICK TOWNSHIP BOARD OF EDUCATION, <br><br> Plaintiff, <br><br> v. <br><br> D.S. and M.S. o/b/o A.S., <br><br> Defendants. | Case No. 2:21-cv-08279 (BRM) (JSA) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendant D.S. and M.S., on behalf of A.S.'s (collectively "Defendants") Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56. (ECF No. 59-3.) Plaintiff East Brunswick Township Board of Education (the "BOE") filed an Opposition. (ECF No. 59-6.) Defendants filed a Reply. (ECF No. 59-7.) Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Defendants' Motion for Summary Judgment is **GRANTED** in part, and **DENIED** in part.

**I.     BACKGROUND**

**A.     Statutory Background: Individuals with Disabilities Education Act**

This matter arises under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.* as an appeal from the Final Administrative Decision of the Honorable Sarah

G. Crowley, New Jersey Administrative Law Judge ("Judge Crowley"), issued on January 5, 2021 (the "Decision").

The IDEA provides federal funding to assist state and local agencies in educating disabled children. The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs . . . [and] to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d). Under the IDEA, public educational institutions must "identify and effectively educate" disabled students by providing free appropriate public education ("FAPE"), or if not, "pay for their education elsewhere if they require specialized services that the public institution cannot provide." *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 735 (3d Cir. 2009). A FAPE must consist of "educational instruction specifically designed to meet the unique needs of the [disabled] child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Ridley School Dist. v. M.R.*, 680 F.3d 260, 268–69 (3d Cir. 2012) (quoting *Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 188–89 (1982)).

States provide a FAPE through individualized education programs ("IEP"). *Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 198 (3d Cir. 2004) (citing 20 U.S.C. § 1414(d)); *Y.B. v. Howell Twp. Bd. of Educ.*, 4 F.4th 196, 198 (3d Cir. 2021) (internal citations omitted) (explaining an IEP is "[t]he 'primary vehicle,' for providing each eligible student with an IDEA-mandated FAPE."). Generally, an IEP is a written statement, "developed, reviewed, and revised by the IEP Team—a group of school officials and the parents of the student—that spells out how a school will meet an individual disabled student's educational needs." *Id.* (quotation marks omitted) (quoting 20 U.S.C. § 1414(d)(1)(A), (B)). "[A]n IEP describes a child's 'present

levels of academic achievement,' offers 'measurable annual goals' to 'enable the child to . . . make progress in the general educational curriculum,' and describes 'supplementary aids and services . . . provided to the child' to meet those goals." *Id.* (quoting 20 U.S.C. § 1414(d)(1)(A)(i)(I), (II)(aa), (IV)). The educational benefit conferred to the student through the IEPs must be "meaningful," *Polk v. Central Susquehanna Intermediate Unit 16*, 853 F.2d 171, 180 (3d Cir. 1988), meaning "more than a trivial educational benefit" in light of the student's "individual abilities," *Ridley*, 680 F.3d at 269. Once the IEP is put in place, the school district must implement the IEP in the least restrictive environment ("LRE"). *See* 20 U.S.C. § 1412(a)(5).

If a parent believes the IEP failed to provide their child with a FAPE in the LRE, they may partake in an administrative "impartial due process hearing," *see* 20 U.S.C. § 1415; *Shore Reg'l*, 381 F.3d at 198 (citing 20 U.S.C. § 1415(e)), on the "identification, evaluation, and educational placement of the child, or the provision of a [FAPE] to such child," 20 U.S.C. § 1415(b)(6)(A). Any party who is dissatisfied with the outcome of the administrative proceeding may file an appeal in a district court of the United States. 20 U.S.C. § 1415(i)(2)(A).

Where a school district has failed to offer a child a FAPE, "[p]arents may unilaterally place their child at a different school" and seek reimbursement from the school district. *J.F. v. Byram Twp. Bd. of Educ.*, 812 F. App'x 79, 81 (3d Cir. 2020) (citing *Shore Reg'l*, 381 F.3d at 198); N.J. Admin. Code § 6A:14–2.10(d). The cost of reimbursement, however, may be reduced or denied by an administrative law judge ("ALJ") if:

> (aa) at the most recent IEP meeting that the parents attended prior to removal of the child from the public school, the parents did not inform the IEP Team that they were rejecting the placement proposed by the public agency to provide a free appropriate public education to their child, including

> stating their concerns and their intent to enroll their child in
> a private school at public expense; or
>
> (bb) 10 business days . . . prior to the removal of the child
> from the public school, the parents did not give written
> notice to the public agency . . . .

20 U.S.C. § 1412(a)(10)(C).[1]

The IDEA requires two factual findings before reimbursing costs for unilateral placement. The first inquiry is whether the school district offered FAPE. *See Shore Reg'l*, 381 F.3d at 198–99. The burden is on the school to show "it complied with the procedures set out in the IDEA and that the IEP was 'reasonably calculated' to enable the child to receive 'meaningful educational benefits' in light of the child's 'intellectual potential.'" *Id.* at 199. If the school district demonstrates it offered the student FAPE, then no reimbursement is required. *Id.* However, if the school district failed to provide FAPE, the second inquiry is whether the student's parents acted appropriately in removing the child from the school district. *Id.*; *see also School Comm'n of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369-70 (1985). Even where both steps of the inquiry are met, "courts retain discretion to reduce the amount of a reimbursement award if the equities so warrant." *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 71 (3d Cir. 2010) (quoting *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 247 (2009)).

**B.     Factual Background**

A.S. was a female classified student in the East Brunswick School District (the "District") in East Brunswick, New Jersey when the underlying Petition for Due Process was filed. (ECF No.

---

[1] This section has been codified by the New Jersey Department of Education as N.J.A.C. 6A:14-2.10. *See Shore Reg'l*, 381 F.3d at 198 (explaining that as long as a state satisfies the requirements of the IDEA, it may fashion its own procedures).

59-1 ¶ 1; ECF No. 59-6 ¶ 1.)[2] In or around October 2005, when A.S. was in preschool, she was determined to be eligible for special education and related services. (*Id.* ¶ 4.) Her classification was "Communication Impaired." (*Id.*) In or around 2009, A.S. was reclassified as "Other Health Impaired" due to a diagnosis of Pervasive Developmental Disorder – Not Otherwise Specified – and Attention Deficit Hyperactivity Disorder ("ADHD"). (*Id.* ¶ 5.) In 2011, A.S. was again reclassified as "Communication Impaired." (*Id.* ¶ 6.) She was not evaluated again until 2018. (*Id.*)

Over time, A.S. was diagnosed with General Anxiety Disorder, Disruptive Mood Dysregulation Disorder, ADHD – Inattentive Type, Expressive Language Disorder, and a Specific Learning Disability in reading comprehension and written expression. (*Id.* ¶ 8.) During her grammar and middle school years, A.S. was placed in a variety of special education programs, including a self-contained class for students with disabilities, as well as a general education setting with support. (*Id.* ¶ 9.) However, A.S. consistently received grades of C, D, and F in her classes. (ECF No. 9-12 at 2.) Nevertheless, she continued to pass to the next grade. (*Id.*)

Between 2008 and 2018, there were no evaluations of A.S. conducted. (*Id.*) After A.S.'s 2018 evaluation, A.S.'s parents served notice and unilaterally placed A.S. at the Lewis School of Princeton following her sophomore year at East Brunswick High School. (*Id.*) A.S. is currently

---

[2] The factual allegations cited herein are drawn from Defendants' Statement of Undisputed Material Facts (ECF No. 59-1), the BOE's Statement of Material Facts in Support of Its Opposition (ECF No. 59-6), and the evidence cited therein. *See* Fed. R. Civ. P. 56(e) (explaining a fact is considered "undisputed for the purposes of the motion" if it is admitted or unchallenged in the parties' statements, or if a party "fails to properly address another party's assertion of fact as required by Rule 56(c)"). Facts are similarly drawn from the Decision of the Honorable Sarah G. Crowley, New Jersey Administrative Law Judge. (ECF No. 9-12.) *See Shore Reg'l*, 381 F.3d at 199 (citations and quotation marks omitted) ("[F]actual findings from the administrative proceedings are to be considered prima facie correct, and if a reviewing court fails to adhere to them, it is obliged to explain why.").

enrolled as a freshman in the academic support program called the Learning Excellence Program at High Point University. (ECF No. 59-1 ¶ 3; ECF No. 59-6 ¶ 3.)

On or about June 26, 2019, Defendants filed a Petition for Due Process, alleging the BOE failed to provide A.S. with a FAPE in the LRE. (*Id.* ¶ 30.) They sought, in part, reimbursement for the cost of A.S.'s placement at the Lewis School. (ECF No. 9-12 at 2.) After mediation between the parties was unsuccessful, the case was transferred to the Office of Administrative Law, where three hearings were conducted on August 10, 12, and 14, 2020, and briefs were filed on December 18, 2020. (*Id.*) On January 5, 2021, Judge Crowley issued a Decision on the Petition. (*See* ECF No. 9-12.)

### C. Administrative Law Judge Findings

During the Administrative proceedings, Judge Crowley heard the testimony of three BOE witnesses and two of Defendants' witnesses. (*Id.* at 2–7.) The BOE presented Jacqueline Emert ("Emert"), the case manager for A.S.; Connor Scott ("Scott"), M.Ed., LDT-C, the head of special services for the BOE; and Rosella Minervini ("Minervini"), the supervisor of the East Brunswick School District.[3] (*Id.*) Defendants presented Jaime Lehrhoff ("Lehrhoff"), MA, LDT-C, of the Livingston Education Center as an expert, and M.S., A.S.'s mother. (*Id.*)

Emert testified that she met A.S. four years prior to the hearing and recalls reviewing A.S.'s IEP and recommending resource classes and language therapy. (*Id.* at 2.) She recalled telling A.S.'s parents that a "pull out" of class for those programs would have been better for A.S., but Defendants did not want to proceed in that way. (*Id.* at 3.) Emert also testified the services were

---

[3] Judge Crowley prohibited the testimony of Jennifer Garcia, CCC-SLP, the BOE's Speech and Language Pathologist, upon the objection of Defendants. (ECF No. 1 ¶ 19.) She also limited Minervini's testimony to reflect the issue of FAPE being provided to A.S. while she was in the school district and precluded her from testifying as an expert. (*Id.* ¶ 22.)

not provided to A.S. because A.S.'s parents said they were providing them privately. (*Id.*) Similarly, Emert alleged A.S. was not evaluated in 2017, at the end of eighth grade, because A.S.'s parents did not consent. (*Id.*) She continued that A.S.'s 2017 and 2018 IEP did not contain speech and language therapy or counseling because her parents wanted her in general education classes. (*Id.*) Judge Crowley found Emert's testimony not to be credible, and inconsistent with the documentary evidence. (*Id.* at 8.)

The BOE also presented the testimony of Scott. He was the case manager for A.S. in eighth and ninth grade. (*Id.* at 3.) Scott explained A.S. became entitled to special education services in the District in 2009; there were no evaluations done on A.S. between 2011 and 2018; and an IEP was completed in June of 2018 before she entered high school. (*Id.*) The 2018 IEP proposed in-class resources for the four core subjects, study skills in the resource center, and speech therapy. (*Id.* at 4.) Scott removed the recommendations for speech and language therapy and the use of a resource room because A.S.'s parents did not want them. (*Id.*) Scott conceded in-class support in general education was not enough to meet A.S.'s needs. (*Id.*) While A.S. received Cs and Ds, she insisted she was not struggling, and she and her parents continued to reject certain services. (*Id.*) A.S.'s parents were specifically concerned with A.S.'s social skills, and wanted her with socially appropriate kids, as opposed to kids with behavioral issues and disabilities. (*Id.*) Scott believed if A.S.'s parents had problems with the services in a proposed IEP, the District was not obligated to provide them. (*Id.* at 4.) He also claimed the BOE had not evaluated A.S. from 2011 to 2018 because the parents wanted to wait. (*Id.*). However, there was no waiver from the parents of the evaluations provided during the proceedings. (*Id.*) Instead, A.S. continued to pass through to the next school level each year despite her failure to meet many of her goals and objectives. (*Id.* at 5.)

Judge Crowley similarly found Scott's testimony to not be credible, noting his testimony was inconsistent with itself and the documentary evidence. (*Id.* at 8.)

The BOE then presented Rosella Minervini, who is the supervisor of the District's Special Services but was not in that position when A.S. was there. (*Id.* at 5.) She was, however, the supervisor of the child study team that prepared the 2018 IEP for A.S. (*Id.*) Minervini confirmed A.S.'s academic and language issues, and said she was a candidate for language learning disability ("LLD") class. (*Id.*) As of the 2018 IEP, A.S. was still considered communication handicapped. (*Id.*) However, the 2018 IEP was not finalized and it was never presented to Defendants because A.S. had already been placed at the Lewis School over the objection of the BOE. (*Id.*)

Defendants presented Jaime Lehrhoff, MA, LDT-C, who conducts educational testing of children and IEP reviews at the Livingston Education Center. (*Id.*) She was qualified as an expert in education and education of learning-disabled children and prepared a report in connection with her evaluation of A.S., which was conducted on February 26, 2020. (*Id.*) Lehrhoff testified there was minimal supervision and little teaching in the resource room of the East Brunswick High School, and A.S. would have struggled in an environment with such a lack of structure. (*Id.*) Instead, the Lewis School gave A.S. the ability to work in a small group setting with one-on-one interaction with teachers. (*Id.*) Lehrhoff reviewed A.S.'s prior testing and evaluations and found she tested in the impaired range, had weak listening and comprehension skills, and demonstrated deficits in auditory processing and expressive and receptive language. (*Id.* at 6.) Her communication impairment was a significant factor in her learning deficits. (*Id.*) Lehrhoff concluded in her expert opinion that the IEPs provided by the BOE failed to provide A.S. with a FAPE in the LRE. (*Id.*). The BOE failed to provide any meaningful educational benefit to A.S., whereas she was making significant improvements at the Lewis School. (*Id.*) Judge Crowley found

Lehrhoff's testimony credible and consistent with the facts and documentary evidence presented at the hearing. (*Id.*)

Lastly, M.S., A.S.'s mother, testified at the hearing. (*Id.*) M.S. explained A.S. was diagnosed with developmental delays at an early age. (*Id.*) She had anxiety and was diagnosed with ADHD. (*Id.*) She also demonstrated erratic behavior and was bullied. (*Id.*) A.S. had issues with the resource room and other BOE recommendations as early as first grade, because she felt she was either placed with kids who were at a much lower level of functioning or in a classroom where she was unable to keep up with other students. (*Id.*) A.S. was pulled out of class for twenty-three minutes in the middle of the school day for speech therapy, but that caused her further anxiety. (*Id.* at 7.) Her parents got her outside counseling to manage her anxiety. (*Id.*)

A.S. did not undergo an evaluation for many years, and there were no LLD classes available in the high school. (*Id.*) M.S. stated the school basically agreed that as long as A.S. went to class, they would pass her. (*Id.*) This caused A.S. anxiety because she was not learning anything and had a hard time keeping up. (*Id.*) When M.S. finally received evaluations of A.S.'s status, she was shocked at how far behind she was. (*Id.*) M.S. testified the BOE failed to offer corrective reading programs, LLD classes, an extended school year, social skills classes, or occupational therapy. (*Id.*) In contrast, at the Lewis School, A.S. was placed in the appropriate classroom and has remediated her disabilities. (*Id.*) Her anxiety was much better and her test scores reflected that change. (*Id.*) M.S. denied ever waiving evaluations and claimed she signed the IEPs because she trusted the District to provide what was best for her daughter. (*Id.*) Judge Crowley found M.S. to be sincere and credible. (*Id.* at 8.)

Ultimately, Judge Crowley found:

> The IEPs from [the BOE] did not provide any meaningful educational benefit to A.S., did not have appropriate goals and

9

objectives for A.S., and failed to provide FAPE in the [LRE]. I further FIND that the out of District placement at The Lewis School has provided a meaningful education benefit to A.S. and has meet [sic] her educational and emotional needs and provided FAPE in the LRE. I further FIND that proper notice of the out of district placement was provided by the parents.

I FIND as FACT that the District has failed to demonstrate that they provided an IEP which provided some meaning education benefit, reasonable goals and objectives and provided FAPE in the LRE. I further FIND that in order to accommodate the desires of the parents, and perhaps avoid litigation[,] the District lost sight of its obligation to provide an IEP which provided A.S. with a meaningful educational benefit. I further FIND that the District[']s] IEPs for the past several years were not reasonably calculated to provide any meaningful educational benefit to A.S. and failed to provide FAPE.

(*Id.* at 8–9.) While Judge Crowley did not find the parents without fault in A.S.'s educational struggles, she ultimately concluded: (1) the District failed to provide FAPE in the LRE, regardless of the parents' desires; (2) the Lewis School was an appropriate placement for A.S.; and (3) the parents' notice to the BOE of the placement of A.S. at the school was proper. (*Id.* at 14–15.) Therefore, reimbursement from the BOE from September 2019, for as long as the placement remained appropriate, was required, as well as compensatory education in the amount of fifty hours. (*Id.*)

### D. The BOE's Appeal

On April 5, 2021, the BOE filed an Appeal of the Decision to this Court. (ECF No. 1.) The BOE alleged Judge Crowley committed significant, cumulative and material errors of fact and law in violation of the IDEA (Count I). (*Id.* ¶¶ 27–30.) Specifically, the BOE alleged Judge Crowley erroneously concluded the BOE failed to provide a FAPE to A.S.; failed to apply the equitable considerations which warrant denying, or substantially decreasing, the tuition reimbursement ordered; and failed to give weight to the testimony of highly qualified independent professionals

called by the BOE, including overlooking much of the relevant testimony. (*Id.*) The BOE thereby

requested reversal of the Decision. (*Id.*)

On May 9, 2021, Defendants filed a Motion for an Order to Show Cause and Enforcement

Action, as well as an Answer and Counterclaim to Plaintiffs' Appeal. (ECF No. 5.) The BOE filed

an Opposition and Cross-Motion on June 7, 2021. (ECF No. 10.) Defendants filed a Reply in

Support of their Motion and Opposition to the BOE's Cross-Motion. (ECF No. 12.) The BOE filed

a Reply to Defendants' Opposition. (ECF No. 15.) The Court issued an Order on July 9, 2021,

following oral argument two days prior, denying the BOE's Cross-Motion for stay and requiring

the BOE's immediate compliance with Judge Crowley's Decision. (ECF No. 17.) Thereafter,

Defendants filed a Second Order to Show Cause, arguing the BOE continued to be non-compliant

with the Court's Order. (ECF No. 19.) In an Order dated December 10, 2021, the Court ordered

that:

> East Brunswick School District shall immediately comply with this
> Court[']s prior Order dated [July 9, 2021], and it shall pay the sum
> of $36,626.00 to the Lewis School of Princeton by 12:00 [p.m.] on
> [December 10, 2021]; East Brunswick School District shall
> reimburse D.S. and M.S. the total amount in tuition and
> transportation for attending the Lewis School, within fourteen (14)
> days, and D.S. and M.S. shall provide proof of payment; All pending
> motions are terminated without prejudice including the district[']s
> motion for stay of enforcement of the final administrative Order.

(ECF No. 35.) The parties still dispute whether the compensatory education component of the

Orders has been complied with fully. The parties were encouraged to engage in settlement

discussions, but no such settlement was reached. (ECF No. 48.) Instead, the parties' coordinated

to file their moving papers, opposition, and reply on this Motion for Summary Judgment simultaneously on December 18, 2022. (ECF No. 59.)

## II.   LEGAL STANDARD

### A.   Standard on Administrative Appeals

The standard of review in an administrative appeal under the IDEA differs from the standard of review governing a typical summary judgment motion. *See M.A. ex rel. G.A. v. Voorhees Twp. Bd. of Educ.*, 202 F. Supp. 2d 345, 359 (D.N.J. 2002), *aff'd*, 65 F. App''x 404 (3d Cir. 2003). "When deciding an IDEA case, the District Court applies a modified version of *de novo* review and is required to give due weight to the factual findings of the ALJ." *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 389 (3d Cir. 2006). "Under this standard, 'factual findings from the administrative proceedings are to be considered prima facie correct,' and 'if a reviewing court fails to adhere to them, it is obliged to explain why.'" *Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004) (quoting *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 271 (3d Cir. 2003)). "In addition, if a[n ALJ] has heard live testimony and has found the testimony of one witness to be more worthy of belief than the contradictory testimony of another witness, that determination is due special weight." *Id.* In other words, "a District Court must accept the [ALJ]'s credibility determinations 'unless the non-testimonial, extrinsic evidence in the record would *justify* a contrary conclusion.'" *Id.* (quoting *Carlisle Area School v. Scott P.*, 62 F.3d 520, 529 (3d Cir. 1995). Legal determinations are reviewed *de novo*. *See P.N. v. Greco*, 282 F. Supp. 2d 221, 235 (D.N.J. 2003).

Where there is "no new evidence presented to the district court, . . . 'the motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record.'" *M.A. ex rel. G.A.*, 202 F. Supp. 2d at 359. "[T]he party

challenging the administrative decision bears the burden of persuasion before the district court as to each claim challenged." *Ridley*, 680 F.3d at 270. "Applying these standards, the district court may make findings 'based on the preponderance of the evidence[.]'" *Moorestown Twp. Bd. of Educ. v. S.D.*, 811 F. Supp. 2d 1057, 1064 (D.N.J. 2011) (quoting *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010)).

### B.  Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002). "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3d Cir.

1991) (citing *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.), *cert. denied*, 474 U.S. 1010 (1985));

*Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996).

The party moving for summary judgment has the initial burden of showing the basis for its

motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party bears the burden

of persuasion at trial, summary judgment is appropriate only if the evidence is not susceptible to

different interpretations or inferences by the trier of fact. *Hunt v. Cromartie*, 526 U.S. 541, 553

(1999). On the other hand, if the burden of persuasion at trial would be on the nonmoving party,

the party moving for summary judgment may satisfy Rule 56's burden of production by either (1)

"submit[ting] affirmative evidence that negates an essential element of the nonmoving party's

claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an

essential element of the nonmoving party's claim." *Celotex*, 477 U.S. at 331 (Brennan, J.,

dissenting). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden

shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the

'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing

that there is a genuine issue for trial.'" *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood

Bd. of Educ. v. N.E., ex rel M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a

party's motion for summary judgment, the court's role is not to evaluate the evidence and decide

the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477

U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v.

BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," if a nonmoving party fails "to make

a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. "[A] complete

failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co*., 972 F.2d 53, 55 (3d Cir. 1992). A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248).

"In evaluating the evidence, the Court must consider all facts and their logical inferences in the light most favorable to the non-moving party." *Rhodes v. Marix Servicing, LLC*, 302 F. Supp. 3d 656, 661 (D.N.J. 2018) (citing *Curley*, 298 F.3d at 276–77). "While the moving party bears the initial burden of proving an absence of a genuine dispute of material fact, meeting this obligation shifts the burden lo [sic] the non-moving party to 'set forth specific facts showing that there is a genuine [dispute] for trial.'" *Id.* (quoting *Anderson*, 477 U.S. at 250).

"Unsupported allegations, subjective beliefs, or argument alone . . . cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019). "Thus, if the nonmoving party fails 'to make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be no genuine issue of material fact.'" *Id.* (quoting *Katz*, 972 F.2d at 55 (quotation marks omitted)). "In considering the motion, the Court 'does not resolve factual disputes or make credibility determinations.'" *Rhodes*, 302 F. Supp. 3d at 661 (quoting S*iegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995)).

### III.   DECISION

Defendants move for summary judgment, arguing the BOE's Appeal of the Decision must be denied because there is no basis in the record to deviate from Judge Crowley's Decision on the underlying Petition for Due Process. (ECF No. 59-3 at 1–2.) Specifically, Defendants argue: (1) Judge Crowley's credibility and factual determinations were correct and should be upheld; (2) the BOE incorrectly maintains Judge Crowley gave little weight to the BOE's independent professionals and overlooked much of the relevant testimony; (3) the BOE failed to meet its burden of proof; (4) A.S.'s IEPs were not appropriate when they were drafted, even under the snapshot rule; (5) the BOE failed to evaluate A.S. in all areas of suspected disabilities and committed procedural and substantive violations; (6) A.S. is entitled to compensatory education; (7) the BOE incorrectly asserts Judge Crowley failed to apply equitable considerations to warrant denying of reducing tuition reimbursement; (8) A.S.'s parents gave proper ten-day notice of a unilateral placement at the Lewis School of Princeton; (9) Defendants do not have the same burden of proof as the BOE about the appropriateness of their unilateral placement; (10) the Lewis School is an appropriate learning environment for A.S.; and (11) Defendants' counterclaims must be granted. (*Id.* at 2–40.)

The BOE responds there is ample evidence in the record the Decision is erroneous and should be rejected. (ECF No. 59-6 at 2.) In Opposition to Defendants' Motion for Summary Judgment, the BOE argues: (1) the administrative decision is subject to a modified *de novo* review; (2) Judge Crowley erroneously concluded the petitioners met the requirements of N.J.A.C. 6A:14-2.10; (3) Judge Crowley failed to apply equitable considerations which warrant denying, or

16

substantially decreasing, the tuition reimbursement ordered; and (4) Judge Crowley's award of fifty hours of compensatory education is arbitrary and without support in the record. (*Id.* at 1-24.)

In reply, Defendants contend Judge Crowley properly ruled: (1) Defendants met the requirements of N.J.A.C. 6A:14-2.10; (2) notice was proper; (3) the Lewis School was an appropriate placement; and (4) compensatory education was appropriate. (ECF No. 59-7 at 1–15.) The Court addresses each argument in turn.

### A.      Judge Crowley's Factual Findings

Defendants argue Judge Crowley's credibility and factual determinations should be upheld because the BOE failed to provide any non-testimonial extrinsic evidence justifying a reversal or contrary conclusion from the Decision. (ECF No. 59-3 at 2.) The BOE does not challenge, with extrinsic evidence or otherwise, the findings outlined in the Decision. (*See* ECF No. 59-6.) Instead, the BOE makes a separate argument that, despite the standard, the decision was nonetheless erroneous. (*Id.* at 1–3.) The Court agrees with Defendants.

Judge Crowley made clear and concise factual and credibility determinations based upon witness testimony and evidence presented during the underlying proceedings. She found M.S. to be sincere and credible and Jaime Lehrhoff to be credible and provide testimony consistent with the facts and documentary evidence presented in the case. (ECF No. 9-12 at 8.) Judge Crowley conversely found the BOE's witnesses—Jacqueline Emert and Connor Scott—to be not credible, noting their testimony was inconsistent with itself and the documentary evidence. (*Id.*) Because the BOE failed to present any non-testimonial evidence that contradicts Judge Crowley's credibility determinations, or factual findings based on the credibility determinations, those determinations stand. *See Shore Reg'l*, 381 F.3d at 199 ("[A] District Court must accept the

[ALJ]'s credibility determinations 'unless the non-testimonial, extrinsic evidence in the record would *justify* a contrary conclusion.'").

This Court must give "due weight" and "deference" to the ALJ's factual findings, as well as "special weight" to the credibility determinations. *See Moorestown*, 811 F. Supp. 2d at 1064. There has been no extrinsic evidence presented to the Court to justify a contrary conclusion at this stage. The BOE does not dispute this point. (*See* ECF No. 59-6 at 1–3.) Accordingly, the Court adopts the factual and credibility findings set forth in the Decision of Judge Crowley.

### B.      Judge Crowley's Decision

Defendants ask the Court to grant summary judgment in their favor, arguing, generally, that the BOE failed to meet its burden of proof on appeal. (*See* ECF No. 59-3 at 3–27.) The BOE argues in opposition that: (1) Judge Crowley erroneously concluded Defendants met the requirements of N.J.A.C. 6A:14-2.10 because the record supports the BOE provided A.S. with FAPE and there is a lack of evidence of requisite notice or appropriate placement in the record; (2) Judge Crowley failed to apply the equitable considerations which would warrant the denying or decreasing of the tuition reimbursement award; and (3) the award of fifty hours of compensatory education is arbitrary and without support in the record. (ECF No. 59-6 at 3–24.)

Where there is "no new evidence presented to the district court, . . . 'the motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record.'" *M.A. ex rel. G.A.*, 202 F. Supp. 2d at 359. The Court exercises *de novo* review over conclusions of law, but applies a clearly erroneous standard to findings of fact, including the ALJ's determination as to the appropriateness of an IEP. *Ridley*, 680 F.3d at 268. A finding is "clearly erroneous" when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been

18

committed." *Fed. Trade. Comm. V. AbbVie Inc.*, 976 F.3d 327, 368 (3d Cir. 2020) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* (quoting *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 574 (1985)).

      1.   The Record Supports Judge Crowley's Findings under N.J.A.C. 6A:14-2.10

Defendants argue the BOE failed to meet its burden of demonstrating it provided a FAPE in the LRE to A.S. (ECF No. 59 at 3–27), and further, that the parents' notice of and placement at the Lewis School of Princeton was proper (*id.* at 35–40). The BOE disagrees, calling the Decision under N.J.A.C. 6A:14-2.10 erroneous. (ECF No. 59-6 at 3–16.)

The two factual findings an administrative law judge must make before awarding reimbursement for the costs of unilateral placement by the student's parents are: (1) the school district failed to provide a FAPE in the LRE to the student; and (2) the placement selected by the parents for the student was proper. *See Shore Reg'l*, 381 F.3d at 198–99; *Sch. Comm'n of Burlington*, 471 U.S. at 369–70; *see also* N.J.A.C. 6A:14-2.10(b) ("[A]n administrative law judge may require the district to reimburse the parents for the cost of [enrollment in a non-public school, early childhood program, or approved private school] if the administrative law judge finds that the district had not made a free, appropriate public education available to that student in a timely manner prior to that enrollment and that the private placement is appropriate.") Notice of the placement must be provided within ten business days. N.J.A.C. 6A:14-2.10(c).

      *i.*    *Judge Crowley Appropriately Concluded the BOE Failed to Provide FAPE in the LRE to A.S.*

A FAPE must consist of "educational instruction specifically designed to meet the unique needs of the [disabled] child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Ridley School Dist.*, 680 F.3d at 268–69 (quoting *Rowley*, 458 U.S.

at 188–89). This is done through the use of IEPs. An IEP is intended to identify a student's "present levels of academic achievement," offer "measurable annual goals" to "enable the child to . . . make progress in the general educational curriculum," and describe "supplementary aids and services . . . provided to the child" in order to achieve those goals. *Y.B.*, 4 F.4th at 198 (quoting 20 U.S.C. § 1414(d)(1)(A)(i)(I), (II)(aa), (IV)). IEPs must be "reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential and individual abilities." *Ridley*, 680 F.3d at 269 (citations and internal quotation marks omitted). The "meaningful" educational benefit must be "more than a trivial educational benefit." *Ridley*, 680 F.3d at 269. Generally, IEPs should be "reasonably calculated to enable the child to achieve passing marks and advance from grade to grade" through the general curriculum. *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 401 (2017). Indeed, "a student offered an educational program providing 'merely more than *de minimis*' progress from year to year can hardly be said to have been offered an education at all." *Id.* at 402–03.

The record demonstrates A.S. failed to meaningfully benefit from the IEPs offered to her during her tenure as a student in the East Brunswick School District. A.S. was found to be eligible for special education and related services when she was in preschool, in or around 2005, due to her being classified as "Communication Impaired." (ECF No. 9-12 at 1.) She was also eventually classified as "Other Health Impaired" due to a diagnosis of Pervasive Developmental Disorder and ADHD. (*Id.*) Thereafter, A.S. was diagnosed with a number of other disorders including anxiety disorder, disruptive mood disorder, and expressive language disorder. (*Id.*) During her grammar and middle school years, A.S. was placed in self-contained classes for LLD and in general education classes, but received no other services. (*Id.* at 2.) She was not evaluated by the District

in any capacity between 2008 and 2018. (*Id.*) While in the East Brunswick School District, A.S. consistently received Cs, Ds, and Fs in her classes, but continued to pass on to the next grade. (*Id.*)

The BOE's own witnesses commented on the failure of the IEPs to address A.S.'s difficulties.[4] Emert discussed A.S.'s 2016 IEP, in which she recommended A.S. participate in resource classes and speech and language therapy, but testified A.S. was withdrawn from those services. (*Id.* at 3.) A.S.'s 2017 IEP did not include speech and language services or counseling, again, and despite Emert's recommendation that A.S. be pulled out for English and Math classes, A.S. remained in general education classes. (*Id.*) Scott testified about A.S.'s 2018 IEP, which recommended in-class resource for all four core subjects, study skills in the resource center and speech therapy. (*Id.* at 4.) However, A.S. was not provided services for speech and language, and she remained in general education classes for her subjects. (*Id.*) Scott conceded those resources were not enough for A.S., and she continuously failed to meet her goals and objectives. (*Id.*)

Based on the facts and testimony presented, Judge Crowley found A.S. was having "significant academic troubles, as well as some social and emotional issues." (*Id.* at 11.) However, these educational needs of A.S. were not being addressed. (*Id.*) Specifically, given A.S.'s classification as "Communication Impaired," her previous requirement for special services, and her continued struggle, as evident from her grades, Judge Crowley found the BOE was obligated to conduct evaluations of A.S., but this did not occur for almost nine years. (*Id.* at 12.) Judge Crowley further found the IEPs failed to set forth A.S.'s goals and objectives and how the program of individually designed instructional activities and related services achieved those goals and objectives. (*Id.*) Indeed, the facts and testimony presented, including from the BOE's own

---

[4] The BOE's witnesses each attributed the lack of evaluations and resources to A.S.'s parents' refusal to accept those recommended by A.S.'s counselors. *See* (ECF No. 9-12 at 2–5.)

witnesses, described above, demonstrated how the programs and resources provided to A.S. failed to adequately address her well-established and recurring needs, including for speech and language services. (*Id.*)

Judge Crowley's finding that the BOE failed to provide a FAPE to A.S. is sufficiently supported by the facts and testimony in the record below, and is not clearly erroneous. *See Ridley*, 680 F.3d at 268. It was the BOE's obligation under the IDEA to offer an IEP reasonably calculated to enable A.S. to make progress, given the surrounding circumstances. *See Endrew*, 580 U.S. at 400. However, the record demonstrates A.S. was making very little progress, if any, year to year, despite advancing from grade to grade. The BOE's failure to evaluate A.S. for nearly nine years, and its failure to construct an IEP reasonably calculated to provide A.S. with a meaningful educational benefit, "can hardly be said to have . . . offered [A.S.] an education at all." *Id.* at 402–03. Accordingly, Judge Crowley did not err in finding the BOE failed to meet its burden of demonstrating it complied with the IDEA. *See Shore Reg'l*, 381 F.3d at 198–99.

> ii.   *Judge Crowley Properly Determined A.S.'s Placement at the Lewis School Was Appropriate*

The second inquiry under N.J.A.C. 6A:14-2.10 is whether the student's parents acted appropriately in removing the child from the school district and placing the student in a private facility. *See School Comm'n of Burlington*, 471 U.S. at 369–70; *Moorestown*, 811 F. Supp. 2d at 1077 ("[R]eimbursement is only permitted if the private placement was appropriate."). The child's placement at the private school need not be "perfect," only "appropriate," meaning "reasonably calculated to enable the child to receive educational benefits." *Id.* at 1077–78.

The record supports Judge Crowley's finding that A.S.'s placement at the Lewis School was appropriate. (*See* ECF No. 9-12 at 14.) The BOE has failed to provide the Court a reason why Judge Crowley's factual findings regarding the Lewis School are not *prima facie* correct, or to

present any non-testimonial evidence to contradict her credibility determinations. *See Shore Reg'l*, 381 F.3d at 199. Instead, Judge Crowley properly relied upon the testimony of Defendants' expert witness, who stated A.S. made "significant improvements" since her enrollment and was "comfortable" in her new placement. (ECF No. 9-12 at 6.) A.S. was an "active participant" there, and the school focused on her "deficits and remediating of what had been missing." (*Id.*)

The BOE argues there was no documentation from the Lewis School showing A.S. was provided with services to address her disabilities; the Lewis School deprived A.S. of placement in the LRE with same-age, non-disabled peers; and the school is not approved by New Jersey for the provision of special education services. (ECF No. 59-6 at 14–16.) However, a private school to which a student is transferred does not need to meet the FAPE requirement, it need only be reasonably calculated to provide the student with an educational benefit. *See Moorestown*, 811 F. Supp. 2d at 1078 (explaining the school district "improperly attempt[ed] to impose a FAPE requirement by arguing that [the private school] was not the least restrictive environment" for the student). Whether the Lewis School had the programs, staff, or level of instruction that was required of the East Brunswick School District is not relevant to the analysis. *See id.* Further, private school placement may be appropriate even when a child is placed in a school that has not been approved by the State. *Id.* Therefore, the BOE's arguments against proper placement are misdirected. Instead, the testimony and documents entered into evidence support Judge Crowley's determination that A.S. received educational benefits from her placement at the Lewis School, and her placement was proper.

        iii.    *Judge Crowley's Notice Determination Was Not Clearly Erroneous*

Under N.J.A.C. 6A:14-2.10, a student's parents are required to "provide notice to the district board of education of their concerns and intent to enroll their child in a nonpublic school .

. . . [Otherwise,] [t]he cost of reimbursement . . . may be reduced or denied." The circumstances

under which reimbursement may be reduced or denied include:

> 1. If, at the most recent IEP meeting that the parents attended prior to the removal of the student from the public school, the parents did not inform the IEP team that they were rejecting the IEP proposed by the district board of education;
>
> 2. If, at least 10 business days (including any holidays that occur on a business day) prior to the removal of the student from the public school, the parents did not give written notice to the district board of education of their concerns or intent to enroll their child in a nonpublic school;

*Id.* Congress intended these requirements to be read conjunctively. *See A.Z. ex rel. M.Z. v. Mahwah Twp. Bd. of Educ.*, No. 04-4003, 2006 WL 827791, *4 (D.N.J. Mar. 30, 2006).

Judge Crowley found A.S.'s parents "served notice" in 2019, provided "proper notice of the out of district placement," and further, that the District was aware A.S. was failing to make meaningful progress in the system. (ECF No. 9-12 at 2, 9, 14.) A "Notice of Unilateral Placement" was included in the Administrative Record. (*See id.*, Ex. P-36.) The BOE contends "Defendants did not provide [the BOE] with requisite notice of unilateral placement," because Defendants did not reject the IEP proposal, but instead, were in agreement with its terms, contrary to N.J.A.C. 6A:14-2.10(c)(1). (ECF No. 59-6.) While there is evidence and testimony in the record to support Defendants provided the BOE proper notice of the removal of A.S. under N.J.A.C. 6A:14-2.10(c)(2), the Decision lacks any statement of facts or analysis of the applicability of Section (c)(1).

Indeed, N.J.A.C. 6A:14-2.10 provides that the cost of reimbursement "*may be* reduced or denied" when the requirements are met, not that it must be. *F.D. v. Holland Twp. Bd. of Educ.*, 05-5237, 2007 WL 2021782, *9 (D.N.J. July 9, 2007). In *F.D.*, the student's parents failed to notify the township of their dissatisfaction with their child's IEP and failed to provide notice of their

enrollment into a private school for six months. *Id.* However, the Court granted reimbursement anyway, finding the child had not received an appropriate education in over six years; she was improving in her new placement; and the township was on notice of the parents' dissatisfaction with the child's IEP. *Id.* at 9–10. The parents' filing of a due process petition less than one year later was "reasonable." *Id.* at 9. Indeed, "several courts have exercised their equitable discretion to permit parents to recover the full or partial cost of reimbursement, despite the parents' failure to provide timely notice as required under IDEA and the corresponding New Jersey regulation." *See H.L. o/b/o V.L. v. Marlboro Twp. Bd. of Educ.*, No. 16-9324, 2017 WL 5463347, *8 (D.N.J. Nov. 14, 2017) (collecting cases).

Here, there exists both testimonial and physical evidence of Defendants' unilateral notice of placement, Defendants filed a due process petition in less than one year after the placement, and M.S.'s testimony reflects the dissatisfaction Defendants' felt and expressed at the 2018 evaluation, despite their failure to outright reject the IEP. Given these factors, and the discretionary language of N.J.A.C. 6A:14-2.10(c), Judge Crowley's finding that Defendants provided proper notice was a "permissible" way to view the evidence, and therefore, not clearly erroneous. *See AbbieVie Inc.*, 976 F.3d at 368 (quoting *Anderson*, 470 U.S. at 574).

### 2.  Equitable Considerations

Defendants argue Judge Crowley correctly weighed the equitable considerations and did not find the parents' actions unreasonable. (ECF No. 59-3 at 29–34.) The BOE responds that Defendants disregarded their obligations to cooperate and assist in A.S.'s FAPE by rejecting programs and services proposed by the school, and they failed to timely seek private school tuition reimbursement. (ECF No. 59-6 at 16–22.) Further, the BOE submits it is "patently unreasonable" for a parent to reject their child's evaluations and insist on less restrictive services, while arguing

the opposite in this motion. (*Id.*) Defendants contend the BOE cannot support its argument when it failed to evaluate A.S. for nearly nine years, and failed to request a due process hearing in the event it believed Defendants interfered in the District's efforts and responsibility to provide A.S. with a FAPE in the LRE. (ECF No. 59-7 at 13–14.)

Even where a district is found to have violated the IDEA, and private school placement is deemed appropriate, "courts retain discretion to reduce the amount of a reimbursement award if the equities so warrant." *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 71 (3d Cir. 2010) (quoting *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230 (2009)). An award of private school tuition "may be reduced or denied under a variety of circumstances, including upon a judicial finding of unreasonableness with respect to actions taken by the parents, or where parents fail to give the school district ten days notice prior to enrolling a child in private school." *Id.* (internal quotation marks and citations omitted) (citing 20 U.S.C. § 1412(a)(10)(C)(iii)(III), (I)(bb)).

Here, the record demonstrates Defendants provided the BOE with the required ten-day notice, and the BOE has failed to produce evidence to the contrary. Therefore, there was no basis for Judge Crowley and no basis for this Court to reduce or deny an award of reimbursement on that ground.

Contrary to the BOE's position, Judge Crowley did address and account for Defendants' "unreasonableness" in rendering the Decision. Judge Crowley explained:

> Although the District failed to provide FAPE, I do not find the parents without fault in the process. The parents were resistant to the recommended proposal for A.S., which included resource classes, speech therapy and counseling. Moreover, the parents represented that they were providing A.S. with counseling and speech therapy as well as tutoring outside of school, which is what they preferred. It was their desire to do this outside of the school day. So, although I have CONCLUDED that it was the District's obligation to provide an IEP that addressed her needs, regardless of the parent's desires, which they failed to do, the parents declined other services which

26

> they insisted on providing outside of the school day by their own
> providers. . . . Compensatory education is an equitable award and is
> determined on a case by case basis. Accordingly, I am awarding a
> very limited compensatory education award of fifty hours to be used
> towards remedial education where needed.

(ECF No. 9-12 at 14–15.) Judge Crowley considered Defendants' fault and resistance to the

process, and reduced the compensatory award accordingly. The Court finds it was not clearly

erroneous for Judge Crowley to reduce the award, but not deny it completely, under the facts and

circumstances accepted as *prima facie* correct therein.

### 3. Compensatory Education

Defendants argue they are entitled to the fifty hours of compensatory education ordered by

Judge Crowley because A.S. was denied a FAPE in the LRE by depriving her of necessary services

and evaluations for years, resulting in her failure to meet IEP goals and objectives during that time.

(ECF No. 59-3 at 27–29.) The BOE submits the decision to grant fifty hours of compensatory

education is arbitrary and without support in the record because Judge Crowley failed to address

how Defendants' fault, A.S.'s private tutoring, and the "remedial services" offered by the Lewis

School included in the cost of tuition, reduced or minimized the award. (ECF No. 59-6 at 22–24.)

Defendants reply the fifty hours of compensatory education was intended to supplement the Lewis

School and make up for the time A.S. was denied a FAPE in the LRE prior to transferring from

the District. (ECF No. 59-7 at 14–15.)

Where a Court determines a student has been denied a FAPE, "a court may award

compensatory education to account for the period the student was deprived of this right." *Lauren

P. ex rel. David & Annmarie P. v. Wissahickon Sch. Dist.*, 310 F. App'x 552, 554 (3d Cir. 2009).

Compensatory Education is a judicially-created remedy intended to place a student "in the same

position they would have occupied but for the school district's violations" of the IDEA. *G.L. v.*

*Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 608 (3d Cir. 2015). Compensatory Education begins to accrue where:

> a school district . . . knows or should know that a child has an inappropriate IEP or is not receiving more than a de minimis educational benefit . . . . If it fails to [remedy the situation], a disabled child is entitled to compensatory education for a period equal to the period of deprivation, but excluding the time reasonably required for the school district to rectify the problem.

*M.C. on behalf of J.C. v. Central Reg'l Sch. Dist.*, 81 F.3d 389, 396 (3d Cir. 1996). The record supports the Judge Crowley's discretionary decision to award fifty hours of compensatory education. As addressed above, the programs and resources provided to A.S. failed to adequately address her well-established and recurring needs, including for speech and language services resulting in her making very little progress, if any, year to year, despite advancing from grade to grade. The BOE's failures denied A.S. a meaningful educational benefit, and "can hardly be said to have . . . offered [A.S.] an education at all." *Id.* at 402–03. This occurred prior to her placement at the Lewis School, and therefore, can reasonably co-exist with any award of private tuition costs. Accordingly, Defendants' Motion for Summary Judgment is granted and Judge Crowley's Decision is affirmed.

### C.    Defendants' Counterclaim for Costs and Fees

Defendants argue their counterclaims seeking costs and fees have merit and should be granted, because they are the prevailing party in the due process action. (ECF No. 59-4 at 40.) The BOE fails to respond to this argument in its Opposition.

Defendants filed an Answer and Counterclaims on May 9, 2021, seeking enforcement of Judge Crowley's Order, and attorney's fees and costs under: (1) the IDEA, 20 U.S.C. § 1415(i)(3)(B)(i)(I) as the prevailing party in a due process action; (2) the Rehabilitation Act of 1973, 29 U.S.C. 794(a) § 504; and (3) 42 U.S.C. § 1983. (*See* ECF No. 5.) Defendants fail to

address whether they satisfy the elements of 29 U.S.C. 794(a) § 504 or 42 U.S.C. § 1983. They blanketly argue their counterclaims have merit and should be granted, without reference at all to the statutes' requirements. Therefore, their motion for summary judgment on those counterclaims is denied. *See Celotex Corp.*, 477 U.S. at 323 (explaining the party moving for summary judgment has the burden of showing the basis for its motion).

Similarly, Defendants' Motion for Summary Judgment on their counterclaim for fees under the IDEA is denied, as Defendants fail to meet their burden for relief. While a court may, in its discretion, award reasonable attorney's fees and costs "to a prevailing party who is the parent of a child with a disability," 20 U.S.C. § 1415(i)(3)(B)(i)(I), the IDEA provides clear direction as to how fees are to be calculated under 20 U.S.C. § 1415(i)(3)(B)(C)-(G). The fees awarded "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(B)(C). However, a prevailing party "is not *automatically* entitled to compensation for all the time its attorneys spent working on the case; rather, a court awarding fees must decide whether the hours set out were reasonably expended . . . and then exclude those that are excessive, redundant, or otherwise unnecessary." *J.L. v. Harrison Twp. Bd. of Educ.*, 14-2666, 2017 WL 1954535, at *2 (D.N.J. May 11, 2017) (quoting *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 726 F.3d 403, 416 (3d Cir. 2013)).

Defendants failed to provide the Court with the information necessary to determine a reasonable compensation for the time their attorneys and experts spent working on this case. An award of fees is a discretionary decision left to the courts, and in exercising that discretion, a court must consider "frivolousness, motivation, and objective unreasonableness . . . and the need in particular circumstances to advance considerations of compensation and deterrence." *Am. Bd. of Internal Med. V. Von Muller*, 540 F. App'x 103, 106-07 (3d Cir. 2013). A prevailing party is only

entitled to a "reasonable fee" and not a "windfall" based on those considerations and others. *M.G. v. E. Reg'l High Sch. Dist.*, 386 F. App'x 186, 189 (3d Cir. 2010). Because Defendants failed entirely to submit evidence "supporting the hours worked and the rates claimed," the BOE is unable to challenge the reasonableness of the requested fee,[5] and this Court is unable to determine an appropriate award of fees, if any are warranted at all. *See McKenna v. City of Phila.*, 582 F.3d 447, 459 (3d Cir. 2009). Accordingly, Defendants' request for summary judgment on their counterclaims for fees is denied.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment, (ECF No. 59), is **GRANTED** in part, and **DENIED** in part.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
UNITED STATES DISTRICT JUDGE

Dated:  July 28, 2023

---

[5] The BOE's failure to address Defendants' request for fees does not affect the Court's holding, because the award of fees is "a judicial action and, regardless of the parties' indifference to it, a court need not lend its imprimatur to an inappropriate order merely because there was no objection to its entry." *See McKenna*, 582 F.3d at 459 n.13.